JS-6                    O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MUZI GAO,                          )   Case No. SACV 20-01355 DDP (ADSx)
                                   )
              Plaintiff,           )
                                   )   **ORDER RE: CROSS-MOTIONS FOR**
     v.                            )   **SUMMARY JUDGMENT**
                                   )
CAMPUS 150 VENTURE II, LLC,        )
et al.,                            )
                                   )   [Dkt. 58, 65, 71]
              Defendants.          )

     Presently before the court are cross motions for summary

judgment, one filed by Defendants Campus 150 Venture II, LLC

("Campus") and BYL Collection Services, LLC ("BYL"), and the other

filed by Plaintiff Muzi Gao ("Gao").  Having considered the

submissions of the parties, the court grants the motions in part,

denies the motions in part, and adopts the following Order.

I.   **Background**

     In August 2018, Plaintiff entered into a residential lease

agreement with Defendant Campus.  The lease required Plaintiff to

pay 12 monthly installments of $860, plus an additional $100 per

month for garage parking.  Before moving in, Plaintiff paid "a

1  security deposit of $1,920 — representing two months' worth of

2  rent."[1]  (Declaration of Muzi Gao, ¶ 3.)

3       The parties dispute whether Plaintiff timely paid rent for the

4  months of June and July 2019.  According to Campus' regional

5  manager, Chenoa Anderson, Gao did not make rent payments for June

6  and July, and owed $1,929 in back rent when her lease expired at

7  the end of July 2019.  (Declaration of Chenoa Anderson ¶ 7.)  When

8  deposed, however, Anderson testified that Plaintiff never missed

9  any rent payments.  (Declaration of Ryan McBride, Ex. I at 26-27.)

10 In any event, Campus did not charge Plaintiff late fees for unpaid

11 rent, and applied the $1,920 "deposit" amount toward her account.

12      After the lease expired, Plaintiff incurred a $135 assessment

13 for apartment and carpet cleaning fees.  (Anderson Decl. ¶ 10.)  On

14 August 13, Campus sent her a "Final Account Statement" indicating

15 (1) that the "deposit" had been applied to "charges due," (2) a

16 zero balance at move-out, and (3) the additional cleaning charges

17 of $135.  (McBride Decl., Ex C.)  The final statement indicated

18 that payment was due within 30 days.  (Id.)

19      On September 7, 2019, Plaintiff mailed a check for the

20 cleaning charges to Campus.  (Gao Decl. ¶ 12; Ex. N).  As of

21 September 24, however, Campus had not received Plantiff's payment,

22 and thus placed her in "collection" status. At some point

23 thereafter, Campus assigned the account to BYL, the collections

24 agency Campus regularly used in connection with delinquent

25

26      [1] Although Plaintiff's declaration, consistent with
   Defendants' characterization, characterizes this payment as a
27 deposit, Plaintiff's motion describes this payment as "advanced
   rent."  The Lease Agreement does provide that the landlord may
28 require the tenant to pay "advance installments of basic rent," and
   that "all such payments shall be considered advanced rent."

accounts.  According to Anderson, Campus referred Gao's account to
BYL on September 27.  (Anderson Decl. ¶ 15.)   BYL's records
indicate, however, that BYL received the account on October 1.
(McBride Decl., Exs. E, I at 38.)   There is no dispute, however,
that Campus received Plaintiff's payment on September 27,
"unselected" her "in collection status," and closed her account.

Nevertheless, BYL believed that Gao's account continued to be
delinquent.  (Declaration of Jeffrey Heft ¶ 7.)   In December, BYL
reported the account as delinquent to two credit reporting bureaus,
Equifax Information Services, LLC ("Equifax") and Trans Union, LLC
("Trans Union").  (Declaration of Jeffrey Heft ¶ 7.)

Soon after, Plaintiff noticed an adverse impact on her credit
report and initiated a dispute with both Experian and Trans Union.
(Gao Decl. ¶¶ 15-16.)   It appears that BYL received a verification
request on January 17, 2021.  (McBride Decl., Ex. H at 49.)
However, the BYL employee assigned to the matter, Caroline
Alessandro ("Alessandro"), did not follow BYL procedures and did
not conduct an investigation.  (Id. at 50.)   The employee
nevertheless reported the information accurate as reported.  (Id.
at 51.)   In February, both credit bureaus notified Gao that the
debt was correctly reported.   (Id. ¶ 17.)

In March 2020, Plaintiff called Campus to confirm that her
account was paid in full.  (Declaration of Craig Mariam, Ex. 14 at
61-62.)   That same day, Campus sent BYL and Gao an e-mail
acknowledging that Gao's account had a zero balance, and requesting
that BYL correct the account and "resubmit to her credit report."
(Id. at 63; Anderson Decl. ¶ 16; Ex. 5.)   Gao did not contact BYL
at that time.  BYL's President, Jeffrey Heft, states that BYL never

became aware of the Campus e-mail because the message was diverted to the BYL recipient's spam folder.  (Heft. Decl. ¶16.)

In April, Plaintiff sent dispute letters to Campus, BYL, Equifax, and Trans Union.  (Gao Decl. ¶ 22.)  BYL again received verification requests from the credit bureaus.  BYL employee Alessandro, who had failed to conduct a prior investigation, was again assigned to the matter.  Alessandro, working from home due to the COVID pandemic and related government mandates, once again failed to conduct an investigation, and again reported the debt as accurate. (McBride Decl., Ex. H at 60-61; Heft Decl. ¶¶ 8-10.)

BYL received Gao's direct dispute on April 28, 2020.  (Heft Decl. ¶ 11.)  This time, a different BYL employee handled Gao's letter, and on May 8, BYL marked the account "in dispute" and notified the credit bureaus of that change.  (Id. ¶ 12.)  BYL then confirmed with Campus that Gao's account was not delinquent.  The account was removed from Gao's credit report on August 9, 2020. (Heft Decl. ¶ 14.)

Plaintiff's complaint alleges causes of action against BYL for violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA") and California's Consumer Credit Reporting Agencies Act ("CCRAA").[2]  Plaintiff also alleges claims under California's Rosenthal Fair Debt Collection Practices Act[3] ("RFDCPA") and for defamation against both BYL and Campus, as well as a negligence claim against Campus.  Campus and BYL seek summary

---

[2] See 15 U.S.C. § 1681, et seq.; 15 U.S.C. § 1692, et seq.; Cal. Civil Code § 1785, et seq.

[3] See Cal. Civil Code § 1788, et seq.

1  judgment on all claims.  Plaintiff seeks partial summary judgment

2  on certain elements of certain of her claims.

3  **II.  Legal Standard**

4       Summary judgment is appropriate where the pleadings,

5  depositions, answers to interrogatories, and admissions on file,

6  together with the affidavits, if any, show "that there is no

7  genuine dispute as to any material fact and the movant is entitled

8  to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party

9  seeking summary judgment bears the initial burden of informing the

10 court of the basis for its motion and of identifying those portions

11 of the pleadings and discovery responses that demonstrate the

12 absence of a genuine issue of material fact.  See Celotex Corp. v.

13 Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from

14 the evidence must be drawn in favor of the nonmoving party.  See

15 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).  If the

16 moving party does not bear the burden of proof at trial, it is

17 entitled to summary judgment if it can demonstrate that "there is

18 an absence of evidence to support the nonmoving party's case."

19 Celotex, 477 U.S. at 323.

20      Once the moving party meets its burden, the burden shifts to

21 the nonmoving party opposing the motion, who must "set forth

22 specific facts showing that there is a genuine issue for trial."

23 Anderson, 477 U.S. at 256.  Summary judgment is warranted if a

24 party "fails to make a showing sufficient to establish the

25 existence of an element essential to that party's case, and on

26 which that party will bear the burden of proof at trial."  Celotex,

27 477 U.S. at 322.  A genuine issue exists if "the evidence is such

28 that a reasonable jury could return a verdict for the nonmoving

1  party," and material facts are those "that might affect the outcome
2  of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.
3  There is no genuine issue of fact "[w]here the record taken as a
4  whole could not lead a rational trier of fact to find for the
5  nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio
6  Corp.</u>, 475 U.S. 574, 587 (1986).

7      It is not the court's task "to scour the record in search of a
8  genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275,
9  1278 (9th Cir. 1996).  Counsel have an obligation to lay out their
10  support clearly.  <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d
11  1026, 1031 (9th Cir. 2001).  The court "need not examine the entire
12  file for evidence establishing a genuine issue of fact, where the
13  evidence is not set forth in the opposition papers with adequate
14  references so that it could conveniently be found."  <u>Id.</u>

15  **III. Discussion**

16      A.   RFDCPA Claims

17          i. Consumer Credit Transaction

18      The RFDCPA limits the ways in which debt collectors may seek
19  to collect outstanding consumer debts.  Cal. Civ. Code § 1788.10.
20  Such debts include "consumer credit transactions," in which
21  "property, services, or money is acquired on credit."  Cal. Civ.
22  Code § 1788.2(e);(f).  The parties appear to agree that residential
23  rent collection is not a consumer credit transaction.  <u>See Phillips
24  v. Archstone Simi Valley LLC</u>, No. CV155559DMGPLAX, 2016 WL 7444550,
25  at *5 (C.D. Cal. Dec. 15, 2016).  The parties disagree, however, as
26  to whether the $135 debt at issue here represents a rental debt or,
27  as Plaintiff characterizes it, a charge for a cleaning service that
28

was payable within thirty days, and thus constituted a credit
transaction.

     Defendants' argument is premised on the contention that Gao
missed two rent payments, and that Gao is attempting to create a
credit transaction where none otherwise would have existed.  This
line of reasoning is not entirely clear.  There is some uncertainty
as to the character of Gao's $1,920 "deposit."  Although Gao
herself referred to it as such, and it appears as a "deposit" on
her account statement, Defendants cite to no provision in the Lease
Agreement requiring a security deposit.  Rather, the Lease
Agreement allows Campus to require "advance installments of basic
rent."  The Lease Agreement also provides that "all such payments
shall be considered advanced rent."  Although the property
manager's declaration states that Plaintiff did not make rental
payments after May 2019, it appears that Plaintiff did not make
rental payments for June and July because she had already paid
$1,920 in "advance rent."  Thus, as the same property manager later
testified, Gao never actually missed any rent payments.  At the
very least, there remains a triable issue as to the predicate for
Defendants' argument: that Gao failed to pay rent due.

     Regardless of the outcome of that question of fact, however,
Defendants appear to concede that the cleaning charges were not
incurred or billed, nor cleaning services provided, until after the
termination of the Lease Agreement.  Nor can there be any dispute
that Gao was granted thirty days to settle those charges.[4]   There

---

[4] To the extent Defendants suggest that Campus voluntarily
credited Gao's $1,920 "deposit" toward rent rather than toward
cleaning fees, Defendants do not explain how Campus enjoyed such
                                              (continued...)

1   is, therefore, at least a triable issue as to whether Gao and

2   Campus engaged in a consumer credit transaction.[5]

3              ii.  Whether Campus is a debt collector

4       With respect to the RFDCPA claim, Campus raises the additional

5   argument that it, as opposed to BYL, is not a debt collector.  The

6   statute defines "debt collector" as one "who, in the ordinary

7   course of business, regularly . . . engages in debt collection."

8   Cal. Civ. Code § 1788.2(c).  There is no evidence, however, that

9   Campus ever engages in debt collection, let alone regularly does so

10  in the ordinary course of business.[6]  Rather, Campus refers all

11  delinquent accounts to BYL.  (Anderson Decl. ¶ 14.)  Although

12  Plaintiff argues that Campus should be deemed to regularly engage

13  in debt collection because it regularly assigns collections to BYL,

14  Plaintiff does not cite to, nor is the court aware of, any

15  authority for the proposition that assigning a debt to a third

16

17

18

19  ────────────────

20       [4](...continued)
    discretion, in light of the Lease Agreement's provision stating

21  that all advance payments were to be considered as rent payments.
    Indeed, although Defendants assert that Gao has attempted to re-

22  characterize a rental debt as a consumer debt, it would appear that
    Campus, not Gao, sought to define the nature of the debt by

23  applying funds toward one type of charge rather than another.

24       [5] Given this dispute of fact, neither BYL nor Plaintiff is
    entitled to summary judgment on Plaintiff's RFDCPA claim.

25       [6] The statute defines debt collection as "any act or practice

26  in connection with the collection of consumer debts."  Cal. Civ.
    Code § 1788.2(b).  "Consumer debt," in turn, includes money due as

27  a result of a "consumer credit transaction."  Cal. Civ. Code §
    1788.2(f).  As discussed above, residential rent collection is not

28  a consumer credit transaction.  Mortgage debt, however, does
    constitute a "consumer debt."  Id.

party constitutes "an act or practice in connection with" debt collection.[7]

Absent any evidence that Campus itself regularly engages in debt collection in the ordinary course of business, Campus is entitled to summary judgment on Plaintiff's RFDCPA claim.[8]

B.  FDCPA Claims

Under the FDCPA, a debt collector may not use a false representation of "the character, amount, or legal status of any debt" in connection with the collection of a debt.  15 U.S.C. § 1692e(2)(A).  Nor may a debt collector "use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Such unfair means include the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[9]  Defendants maintain that BYL did not violate the FDCPA because BYL "merely reported that a debt was owed," and "[n]ever demanded any payment from Ms. Gao."  (Motion at 15:27-16:1.)

In her briefs to this court, including her reply in support of her motion for summary judgment, Plaintiff argues that BYL <u>did</u> send

---

[7] Indeed, even though mortgage debt is a "consumer debt," "[n]umerous courts within the Ninth Circuit have concluded that foreclosure pursuant to a deed of trust is not the collection of a debt within the meaning of the RFDCPA."  <u>Gates v. Wachovia Mortg.</u>, <u>FSB</u>, No. 2:09-CV-02464, 2010 WL 4025064, at *2 (E.D. Cal. Oct. 13, 2010) (collecting cases).

[8] Plaintiff's motion for summary judgment with respect to the RFDCPA claim against Campus is, therefore, denied.

[9] Although Plaintiff's briefs suggest that Plaintiff brings separate claims pursuant to Sections 1692f and 1692f(1), both provisions are listed in the same cause of action in Plaintiff's Complaint, and it is unclear whether or how the facts support two independent claims.

her a collection letter.  The record includes an October 7 letter
from BYL to Plaintiff bearing a "BYLCollections" logo, referring to
a $135 debt.  (McBride Decl., Ex. T.)  The letter explicitly
stated, "This communication is from a debt collector and is an
attempt to collect a debt."  ("Id.)  The letter also included a
payment stub captioned "Pay By Mail" and listing an "Amount Due" of
$135, with additional instructions on how to enter credit card
payment information.  (Id.)  At oral argument, however, Plaintiff
conceded that she never received the letter.  The letter cannot,
therefore, serve as the predicate for Plaintiff's FDCPA claims.

Alternatively, Plaintiff argues that BYL's inaccurate
reporting to the credit reporting agencies constitutes a false
representation of a debt for purposes of 15 U.S.C. § 1692e(2) and
an unfair means to collect a debt under 15 U.S.C. § 1692f.  Several
courts have indeed suggested that reporting of information to
credit reporting agencies is sufficiently "connected to debt
collection," at least for purposes of 15 U.S.C. § 1692e(2)(A).
Memmott v. OneWest Bank, No. CIV. 10-3042-CL, 2011 WL 1560985, at
*12 (D. Or. Feb. 9, 2011); see also Sotto v. Mountain Lion
Acquisitions Inc., No. 818CV00245JLSDFM, 2018 WL 6167922, at *3
(C.D. Cal. Nov. 8, 2018); cf. Yulaeva v. Greenpoint Mortg. Funding,
Inc., No. CIVS-09-1504 LKK/KJM, 2009 WL 2880393, at *10 (E.D. Cal.
Sept. 3, 2009) ("[P]laintiff's claim here is based on reporting of
default to credit reporting agencies, an activity . . . that is
also squarely connected to debt collection."); cf. Morgovsky v.
Creditors' Collection Serv. of San Francisco, 19 F.3d 28 n.1 (9th
Cir. 1994) (discussing jurisdiction over claim of allegedly

1  misleading report to credit agency in violation of 15 U.S.C. §

2  1692e(2)(A)) (unpublished disposition).

3      Accordingly, Plaintiff's motion is granted with respect to the

4  question whether FDCPA violations occurred under 15 U.S.C. §

5  1692e.[10]

6      C.  Bona Fide Error

7      Defendants also seek summary judgment on Plaintiff's FDCPA,

8  FCRA, CCRAA, and RFDCPA claims on the basis of affirmative defenses

9  of bona fide error and reasonable procedures.  A debt collector is

10 not liable for an FDCPA violation if "the violation was not

11 intentional and resulted from a bona fide error notwithstanding the

12 maintenance of procedures reasonably adapted to avoid any such

13 error."  Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002,

14 1005-06 (9th Cir. 2008) (quoting 15 U.S.C. ¶ 1692k(c)).  The FCRA,

15 CCRAA, and RFDCPA contain similar provisions.  See 15 U.S.C. §

16 1681m(c); Cal. Civ. Code § 1785.25; Cal. Civ. Code § 1788.62(e).

17     BYL concedes that its employee, Alessandro, failed to conduct

18 an appropriate, or indeed any, investigation in response to the

19 verification requests from the credit agencies, and erroneously

20 confirmed the validity of the reported debt multiple times.  There

21 is no direct evidence, however, of any intentional policy decision

22 on BYL's part to not conduct investigations.  Indeed, once a

23 competent employee became aware of Plaintiff's dispute, BYL changed

24

25     [10] The court is not persuaded, however, that BYL's
26 communications with credit bureaus, absent any communication with
   Plaintiff herself, constitute a "means to collect or attempt to
27 collect any debt" for purposes of 15 U.S.C. § 1692f.  Furthermore,
   Plaintiff's FDCPA claim under 15 U.S.C. § 1692e remains subject to
28 Defendants' bona fide error affirmative defense, discussed below.

1  the debt status to "disputed" within ten days, notified the credit

2  agencies of the change, and resolved the entire matter within three

3  months.  A reasonable trier of fact could conclude that BYL's

4  failure here was "an isolated instance of human error that was

5  promptly cured."  Brown v. Equifax Info. Servs., LLC, No.

6  1:09-CV-0168-CAM-LTW, 2010 WL 11647403, at *17 (N.D. Ga. Feb. 16,

7  2010) (collecting cases).

8      The record does not, however, compel such a conclusion.

9  Alessandro was one of only six BYL employees, and served not as an

10 entry-level new hire, but rather as BYL's compliance manager.  The

11 nature of her position, combined with her repeated failures, give

12 rise to a genuine dispute as to BYL's willful or reckless

13 conduct.[11]  Even assuming BYL's mistakes were unintentional, BYL

14 can only escape liability if its policies were (1) "reasonably

15 adapted to avoid the error" and (2) actually maintained.  Reichert,

16 531 F.3d at 1006 (quoting Johnson v. Riddle, 443 F.3d 723, 729

17 (10th Cir.2006); Wilhelm v. Credico, Inc., 519 F.3d 416, 421 (8th

18 Cir.2008)  Both of these questions present disputes of fact.

19 Defendants have introduced evidence of BYL's procedures, policies,

20 and employee-training efforts.  (Heft Decl., ¶¶ 3-4; Exs. 6-8.)  It

21 is not clear, however, whether or how those particular policies

22 generally prevented total failures to investigate, such as

23 Alessandro's.  Furthermore, those policies may be of limited

24 relevance here, given Defendants' own evidence that the COVID-19

25 pandemic "had a severe impact on BYL," "posed significant

27      [11] For this same reason, Defendant is not entitled to summary
28 judgment on Plaintiff's common law claims.  See 15 U.S.C. §
   1681h(e).

1  difficulties in terms of monitoring employee productivity," and

2  required BYL to "invest[] in and adopt[] new technologies."  (Heft

3  Decl. ¶ 10.)  The nature and extent of BYL's COVID-adjusted

4  policies remains to be seen, and whether those procedures were

5  reasonable is a question for the trier of fact.[12]

6      D.  Emotional Distress Damages

7      Lastly, Defendants seek summary judgment on Plaintiff's claim

8  for emotional damages. "To survive summary judgment on an emotional

9  distress claim under the FCRA, Plaintiff must submit evidence that

10 reasonably and sufficiently explains the circumstances of his

11 injury and does not resort to mere conclusory statements."

12 Taylor v. First Advantage Background Servs. Corp, 207 F. Supp. 3d

13 1095, 1102 (N.D. Cal. 2016) (quoting Centuori v. Experian Info.

14 Solutions, Inc., 431 F.Supp.2d 1002, 1010 (D.Ariz.2006)).  A

15 plaintiff's testimony alone may be sufficient to meet this burden.

16 Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir.

17 2003).

18     Courts have found sufficient detail in plaintiffs' testimony

19 where, for example, plaintiffs testify as to specific forms and

20 manifestation of mental distress.  See, e.g., Llewellyn v. Allstate

21 Home Loans, Inc., 711 F.3d 1173, 1183 n.3 (10th Cir. 2013)

22 (discussing "drenching night sweats, panic attacks," "great stress

23 and anxiety," and plaintiff's feeling that he "could not

24 recover."); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235,

25 241 (4th Cir. 2009) (discussing "headaches, sleeplessness, skin

26

27     [12] This triable issue also precludes a grant of summary
28 judgment in Plaintiff's favor on her FDCPA, FCRA, CCRAA, and RFDCPA
   claims.

acne, upset stomach, and hair loss," along with testimony from

third parties).  At the same time, some courts have found

insufficient detail even where plaintiffs testify as to specific

forms of distress.  See, e.g., Smart v. Emerald City Recovery, LLC,

No. C18-0448-JCC, 2019 WL 366205, at *2 (W.D. Wash. Jan. 30, 2019)

(finding allegations that plaintiff was "embarrassed, suffered

headaches, nausea, nerves, loss of concentration, insomnia and loss

of sleep, anxiety, irritability, frustration and intimidation and

suffered emotionally in other ways from the distress of having a

stranger come in the middle of the night" too conclusory).

Here, Plaintiff testified, "I feel emotional stress because

I'm very worried about the adverse impact that this issue can cause

me.  And I feel stressful everyday because I try to resolve this

issue as soon as possible."  (Mariam Decl., Ex. 14 at 106.)

Plaintiff further testified that her credit report issues caused

her to forego her typical midday nap or rest, and that "it's like

you always have this thing hanging there and you can't resolve it."

(Id. at 107-108.)  Plaintiff's friend also testified that Plaintiff

told her she was "really stressed," and began taking melatonin to

sleep.  (Mariam Decl., Ex. 15 at 34, 47. 58.)  Under any standard,

this evidence does not sufficiently explain the nature or

circumstances of Plaintiff's emotional distress in anything more

than conclusory terms.[13]  Summary judgment in favor of defendants

---

[13] Defendants cite to cases finding plaintiff testimony
unacceptably conclusory.  See, e.g., Costa v. Nat'l Action Fin.
Servs., 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007);
Bolton v. Pentagroup Fin. Servs., LLC, No. CIV-F-08-0218 AWI GS,
2009 WL 734038, at *10 (E.D. Cal. Mar. 17, 2009).  The courts in
those cases, however, concluded that plaintiffs claiming emotional
distress damages must meet state court standards for intentional
(continued...)

1  is therefore warranted with respect to Plaintiffs' claim for

2  emotional distress damages.

3       E.   Remaining Issues Raised by Plaintiff

4       As discussed above, summary judgment is not appropriate on

5  Plaintiff's FDCPA, FCRA, CCRAA, and RFDCPA claims, as (1) Campus is

6  not a debt collector under the RFDCPA and (2) triable issues remain

7  with respect to BYL's affirmative defenses.  Nevertheless, in the

8  alternative, Plaintiff also seeks partial summary judgment with

9  respect to certain elements of her claims that do not overlap with

10 Defendants' motion.  Neither Defendants' opposition nor Plaintiff's

11 reply, however, makes any mention of any of these non-overlapping

12 elements.  Although there appears to be no dispute, the court has

13 reviewed the evidence and agrees with Plaintiff that there is no

14 triable issue as to whether (1) BYL is a furnisher of credit

15 information under the FCRA; (2) BYL reported credit information to

16 a credit reporting agency; (3) Plaintiff disputed the "debt" to

17 consumer reporting agencies; (4) BYL furnished inaccurate

18 information; (5)BYL failed to conduct a reasonable investigation of

19 the disputed information; (6) BYL knew or should have known the

20 information was inaccurate; (7) BYL is a "person" under the CCRA;

21 (8) Plaintiff suffered some degree of actual damages as a result of

22 BYL's inaccurate reporting; (9) Plaintiff is a "consumer" and

23 "debtor;" and (10) BYL is a "debt collector."  Plaintiff's motion

24 is granted with respect to these elements of her claims.

25 **IV.  Conclusion**

26 _____

27     [13](...continued)
    infliction of emotional distress.  The Ninth Circuit has not
28 addressed the question, and Defendants themselves do not contend
    that such a relatively high standard is appropriate.

For the reasons stated above, Defendants' and Plaintiff's motions are both GRANTED, in part, and DENIED, in part.  Summary judgment is granted in favor of Campus with respect to Plaintiff's RFDCPA claim.  Summary judgment is granted in favor of both Defendants with respect to Plaintiff's claim for emotional distress damages.  Partial summary judgment is granted to Plaintiff as to certain elements of her claims against BYL, but denied with respect to her FDCPA, FCRA, CCRAA, and RFDCPA claims more generally.

IT IS SO ORDERED.

Dated:  January 31, 2022

DEAN D. PREGERSON
United States District Judge